IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

COLEEN J. COLUNGA      )    CIVIL 18-00085 LEK-KJM
                     )
        Plaintiff,    )
                     )
    vs.              )
                     )
NANCY A. BERRYHILL, Acting  )
Commissioner of Social    )
Security,             )
                     )
        Defendant.    )
_____ )

**ORDER DENYING PLAINTIFF'S APPEAL AND AFFIRMING**
**THE ADMINISTRATIVE LAW JUDGE'S OCTOBER 20, 2016 DECISION**

Before the Court is Plaintiff Coleen Colunga's ("Plaintiff") Amended Complaint for Review of Social Security Disability and Supplemental Security Income Benefits Determinations ("Amended Complaint"), filed on March 6, 2018, in which she appeals from Administrative Law Judge Kyle Andeer's ("ALJ") October 20, 2016 Decision ("Appeal").[1] [Dkt. No. 6.]  The ALJ issued the Decision after conducting a hearing on August 9, 2016 ("Hearing").  [Administrative Record ("AR") at 21.[2]]  The ALJ ultimately concluded Plaintiff was not disabled, for purposes

_____

[1] Plaintiff noted the date of the ALJ's Decision is October 17, 2016 in her Amended Complaint, however the Decision is signed and dated October 20, 2016.  See Amended Complaint at 3; Decision, AR at 32.

[2] The Decision, including the Notice of Decision - Unfavorable and the List of Exhibits, is AR 18-37.

of the Social Security Act, since March 1, 2013. [Decision, AR at 32.]

On July 30, 2018, Plaintiff filed her Amended Opening Brief ("Amended Brief"). [Dkt. no. 17.] Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, ("the Commissioner"), filed her Answering Brief on September 11, 2018, and Plaintiff filed her Reply Brief on September 25, 2018. [Dkt. nos. 18, 19.] This Court heard oral argument on October 29, 2018, and issued an entering order ruling on Plaintiff's Appeal on November 26, 2018. [Dkt. no. 21.] The instant order supersedes that entering order. Plaintiff's Appeal is hereby denied, and the ALJ's Decision is affirmed, for the reasons set forth below.

## BACKGROUND

On September 12, 2014, Plaintiff protectively filed a Title II application for disability insurance benefits and supplementary security benefits pursuant to Title XVI, alleging disability since March 1, 2013. [Decision, AR at 21.] On March 17, 2015, both applications were denied, and again on reconsideration on June 1, 2015. On June 29, 2015, Plaintiff timely filed a request for hearing. At the Hearing, Plaintiff was represented by her former counsel, Jennifer B. Lyons, Esq. Plaintiff and an impartial vocational expert, Margaret Chrissy Ishida ("VE"), appeared and testified at the Hearing. [Id.]

In the instant Appeal, Plaintiff does not contest the ALJ's findings in steps one through three of the five-step sequential analysis to determine whether a claimant is disabled. Thus, the ALJ's findings as to those steps are only briefly discussed here.

At step one, the ALJ determined Plaintiff earned $6,807.39 prior to March 1, 2013 ("alleged onset date") and had not engaged in substantial gainful activity after the alleged onset date. [Id. at 23.] The ALJ did not consider Plaintiff's earnings to constitute substantial gainful activity. [Id.]

At step two, the ALJ found Plaintiff to have two severe impairments: chronic obstructive pulmonary disease ("COPD") and affective disorder. [Id. at 24.] With regard to activities of daily living, the ALJ found Plaintiff had no restrictions. The ALJ considered testimony from Plaintiff and her daughter, Keola Thompson, and concluded Plaintiff "could perform personal care activities, she could make simple meals such as sandwiches, she could wash clothes and clean up after herself, she could drive a car, and she could shop in stores with her granddaughter." [Id. (citing Exhibits 1E, 6E, 12E, 13E).[3]]

_____

[3] In the Decision, the ALJ actually referred to statements by "claimant and her friend" when citing to Exhibits 1E, 6E, 12E, and 13E. [Decision, AR at 24.] Exhibit 1E is a "Function - Report - Third Party" prepared by Keola Thompson, dated January 8, 2014 ("1/8/14 Third Party Function Report"); [AR at 221-28;] Exhibit 6E is the "Function Report - Adult" prepared by
(continued...)

With regard to her complaints of right shoulder pain,
the ALJ reviewed and discussed Plaintiff's diagnoses from:
February 22, 2016, concerning her right shoulder impingement;
March 2, 2016, concerning her cervical disc disorder with
radiculopathy; and March 31, 2016, concerning her complaints of
right shoulder pain. [Id. at 25.] Physical therapy progress
notes from Kyle K. Kikuchi, D.P.T., Certified M.D.T. ("DPT
Kikuchi") dated April 29, 2016, indicate Plaintiff had no
difficulty performing daily living activities; however, her
improvement was limited due to "poor compliance with plan of
care." [Id. (citing Exhibit 17F, p. 4).] Based on DPT Kikuchi's
prognosis, the ALJ found no evidence that Plaintiff's right
shoulder impairment lasted the requisite twelve-months in
duration. [Id. (citing Social Security Ruling ("SSR") 82-52; SSR
85-28).] Plaintiff also complained of right wrist pain,
numbness, and tingling in her hands in February and March 2016,
but Plaintiff's x-rays revealed no arthritis or ligamentous
injuries. [Id. (citing Exhibits 16F, pages 4 and 8; 17F, p. 140-

---

³ (...continued)
Plaintiff, dated January 14, 2015 (1/14/15 Claimant Report"); [AR
at 248-55;] Exhibit 12E is the "Function Report - Adult" prepared
by Plaintiff, dated May 10, 2015 (5/10/15 Claimant Report"); [AR
at 283-90;] and Exhibit 13E is the "Function - Report - Third
Party" prepared by Ms. Thompson, dated May 15, 2015 (5/15/15
Third Party Function Report"), [AR at 291-98]. The ALJ did not
cite to any specific pages within the Exhibits. Plaintiff
represents that Ms. Thompson is her daughter. [Amended Brief at
1.]

4

42).[4]]  In April 2016, Plaintiff underwent surgery to excise a cyst from her right wrist.  [Id. (citing Exhibits 13F, p. 2; 14F, page 1; 17F, pages 8-139, 182-184).[5]]  In May 2016, Dr. Tanaka noted Plaintiff had no pain following her wrist surgery, and no pain or numbness in her extremities.  [Id. (citing Exhibit 16F, p. 2).[6]]  As a result, the ALJ found Plaintiff not to have a severe right wrist impairment that lasted twelve-months in duration.  [Id. (citing SSR 82-52, SSR 85-28).]  Thus, neither Plaintiff's right shoulder condition nor her right wrist condition constituted a severe impairment.

At step three, the ALJ found Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [Id. at 26.]

---

[4] Exhibit 16F at page 4 is a follow up report by Clifford Tanaka, M.D., dated April 2, 2016; [AR at 544;] and page 8 is a follow up report by Dr. Tanaka dated February 13, 2016; [AR at 548;] Exhibit 17F at page 140 is the first page of a report prepared by Sara M. Sakamoto, M.D., dated March 31, 2016, [AR at 698].

[5] Exhibit 13F at page 2 is a report by Jamil S. Sulieman, M.D. dated April 2, 2016; [AR at 495;] Exhibit 14F at page 1 is the first page of a report prepared by Dr. Sakamoto, dated April 22, 2016; [AR at 521;] Exhibit 17F at pages 8-139 are various pages of medical records from Castle Medical Center dated April 1, 2016 through April 14, 2016; [AR at 566-697;] and pages 182-184 are the surgery and procedure reports from Dr. Sakamoto dated April 14, 2016, [AR at 740-42].

[6] Exhibit 16F at page 2 is the first of a two-page follow up report by Dr. Tanaka, dated May 24, 2016.  [AR at 542.]

At step four, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to

> perform medium work as defined in 20 CFR 404.1567(c), 20 CFR 416.967(c), and SSR 83-10 (*i.e.*, lift and/or carry up to 50 pounds occasionally and up to 25 pounds frequently, stand and/or walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday), except that: she is limited to simple, routine and repetitive tasks; she is limited to a low stress job defined as requiring only occasional decision making or judgment and having only occasional changes in the work setting; she can have only occasional interaction with the public, and; she can have only occasional interaction with co-workers or supervisors (20 CFR 404.1520(e); 20 CFR 416.920(e)).

[Id. at 27 (emphasis omitted).] In crafting his Decision, the ALJ considered the following: Plaintiff's symptoms; the extent to which the symptoms could reasonably be construed as consistent with the objective medical and/or other evidence; and opinion evidence. [Id.] The ALJ followed a two-step process when he reviewed Plaintiff's symptoms, to first determine whether an underlying medically determinable physical and/or mental impairment exists, and whether it could be reasonably expected to result in Plaintiff's alleged symptoms. [Id.] Next, the ALJ determined the extent to which Plaintiff's symptoms limited her functioning. [Id. at 28.] Where statements regarding intensity, persistence, or limiting effects of pain were not substantiated by objective medical evidence, the ALJ considered other evidence to make his determination of Plaintiff's disability. [Id.]

The ALJ considered Plaintiff's statements against the medical evidence and Plaintiff's own admissions. At the time of the hearing, Plaintiff was planning to travel to California in April 2016; [id. at 28 (citing Exhibit 17F, p. 142);[7]] and the ALJ found – consistent with his determination at step two – Plaintiff had little trouble performing activities of daily living, [id.]. The ALJ noted Plaintiff went out often and visited her mother's residence every day; she also went to medical appointments and to the store. [Id.] The ALJ determined Plaintiff's activities of daily living were "not consistent with her allegations of disabling pain and symptoms." [Id.]

The ALJ also noted Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the persistence and limiting effects were not consistent with the medical records and other evidence. [Id. (citing SSR 16-3p).] The ALJ considered that, in March 2012, medical records showed Plaintiff's medication resolved some breathing symptoms, with no intrapulmonary abnormality. [Id. (citing Exhibits 1F, p. 13; 4F, p. 13).[8]] In July 2014, there were no acute cardiopulmonary findings, [id. (citing Exhibits 2F,

---

[7] Exhibit 17F at page 142 is a note from treating physician Dr. Sakamoto, dated April 13, 2016. [AR at 700.]

[8] Exhibit 1F at page 13 is a March 28, 2012 Emergency Department ("ED") Report from Castle Medical Center; [AR at 341;] Exhibit 4F at page 13 is a ED Physician Notes dated March 28, 2012 from Castle Medical Center. [AR at 387.]

p. 3; 3F, pages 10 and 12; 4F, p. 7; 8F, p. 25),[9]] and Plaintiff
had a normal pulmonary function test in September of that same
year. [Id. (citing Exhibits 1F, pages 9-11; 2F, pages 9-11; 3F,
pages 11, 13; 8F, p. 26).[10]] In 2015, Dr. Sulieman noted an
increase in Plaintiff's breathing impairment; however, the ALJ
pointed out the exacerbation was sporadic and did not last for
twelve consecutive months. [Id. (citing SSR 82-52).] In October
2015, Dr. Tanaka noted Plaintiff reported increased congestion
and cough, but she denied experiencing shortness of breath or
dyspnea on exertion. [Id. (citing Exhibit 16F, p. 4).[11]] Again
in October 2015, Dr. Sulieman reported Plaintiff's gradual

---

[9] Exhibit 2F at page 3 is a General Diagnostic note from
Alan R. Papst M.D., dated July 25, 2014; [AR at 347;] Exhibit 3F
at pages 10 and 12 are identical copies of a General Diagnostic
note from Dr. Papst dated July 25, 2014; [AR at 365, 367;]
Exhibit 4F at page 7 is a General Diagnostic note from Dr. Papst
dated July 25, 2014; [AR at 381;] and Exhibit 8F at page 25 also
appears to be the same General Diagnostic note from Dr. Papst
dated July 25, 2014, [AR at 429].

[10] Exhibits 1F at pages 9-11 and Exhibit 2F at pages 9-11
are identical copies of pulmonary records from Castle Medical
Center, dated September 24, 2014; [AR at 333-39, 353-55;]
Exhibit 3F at pages 11 and 13 are identical copies of a pulmonary
report from Dr. Sulieman dated September 24, 2014; [AR at 366,
368;] Exhibit 8F at page 26 is an identical copy of the pulmonary
report from Dr. Sulieman dated September 24, 2014, [AR at 430].

[11] The ALJ incorrectly cited to page 4 of Exhibit 16F which
is a follow up report by Dr. Tanaka dated April 2, 2016. [AR at
544.] It appears the ALJ meant to cite to page 14 of Exhibit
16F, which is a follow up report by Dr. Tanaka dated October 24,
2015, noting Plaintiff's "increased congestion, cough" and her
"deni[al of] any chest pain, shortness of breath, or dyspnea on
exertion[.]" [AR at 554.]

progress with treatment and reduced episodes of exacerbations. [Id. (citing Exhibit 13F, p. 14).[12]] The ALJ relied upon Dr. Sulieman's December 2015, February 2016, and April 2016 notes showing that Plaintiff's pulmonary status was stable, her symptoms had dramatically improved, and she denied any significant chest pain, palpitations, cough, or wheezing. [Id. (citing Exhibit 13F, pages 2, 5, and 8).[13]]

State agency medical consultants, D. Mai, M.D. and N. Shibuya, M.D. concluded that Plaintiff could perform medium exertional-level work with generally unlimited postural activities, but had limited used of her right upper extremity and should avoid concentrated exposure to respiratory irritants and hazards.[14] [Id. at 28-29 (citing Exhibits 1A, 2A, 5A, 6A).[15]]

---

[12] Exhibit 13F at page 14 is a report by Dr. Sulieman dated October 24, 2015. [AR at 507.]

[13] Exhibit 13F at page 2 is a report by Dr. Sulieman dated April 2, 2016; [AR at 495;] page 5 is a report by Dr. Sulieman dated February 6, 2016; [AR at 498;] and page 8 is a report by Dr. Sulieman dated December 12, 2015, [AR at 501].

[14] The ALJ noted both Dr. Mai and Dr. Shibuya are nonexamining medical sources, but gave their residual functional capacity assessments great weight due to the fact that they are generally consistent with the medical evidence and because they are familiar with the Social Security disability program. [Decision, AR at 29 (citing SSR 06-03p).]

[15] Exhibit 1A is a Disability Determination Explanation dated March 16, 2015, produced by G. Frisch, M.D. and Dr. Shibuya; [AR at 63-77;] Exhibit 2A is a Disability Determination Explanation dated March 16, 2015, produced by Dr. Frisch and Dr. Shibuya; [AR at 78-92;] Exhibit 5A is

(continued...)

The ALJ did not find evidence that a separate limitation to
respiratory irritants was warranted. As to Plaintiff's past
diagnoses and complaints related to her right shoulder and cyst
impairments discussed at step two, Dr. Papst's treating notes
indicate Plaintiff's ability to use her hands for gross and
dexterous movement was within normal limits and she could elevate
her arm ninety percent of the way. [Id. at 29 (citing Exhibits
7F; 10F).[16]] The ALJ found no evidence that Plaintiff had
postural limitations, or that she must avoid hazards such as
unprotected heights or moving machinery. The ALJ found
Dr. Papst's treating notes, [id. (citing Exhibits 4F, 7F),] to
support his medical source statement.

The ALJ gave only partial weight to the mental
functional limitation opinions of Kristin A. Christensen, Psy.D.
because he found it to be internally inconsistent. [Id. (citing

---

[15] (...continued)
Plaintiff's Disability Determination Explanation on
reconsideration ("Reconsideration DDE"), dated June 1, 2015,
prepared by R. Torigoe, M.D. and Dr. Mai in part; [AR at 95-112;]
Exhibit 6A is a identical copy of the Reconsideration DDE, [AR at
113-30]. The ALJ did not reference any specific page from
Exhibits 1A, 2A, 5A, or 6A.

[16] Exhibit 7F is the Treating Source Statement of Dr. Papst,
covering the dates of January 19, 2015 through March 24, 2015;
[AR at 401-04;] and Exhibit 10F is the Treating Source Statement
of Dr. Papst, covering the dates of January 19, 2015 through
May 22, 2015, [AR at 439-43]. The ALJ did not reference any
specific page within the exhibits.

Exhibits 5F; 9F; 11F; 12F, pages 2, 16-20, 28-32, and 40).[17]]   In

August 2014 and May 2016, Dr. Christensen stated Plaintiff was

not emotionally stable enough to work, and in February 2015,

Dr. Christensen opined Plaintiff's psychological symptoms were

significant enough to prevent her from returning to the workforce

at that time.  [Id. (citing Exhibit 12F, pages 2, 26, 40, and

43).[18]]   However, Dr. Christensen's notes in 2015 stated

Plaintiff could: understand and remember simple work

instructions; maintain regular job attendance; persist at

repetitive work tasks on a consistent basis under ordinary

supervision; get along with supervisors and coworkers if contact

were minimal; adapt/cope with a low-demand entry-level job; and

was capable of managing benefits in her own best interest without

---

[17] The following exhibits were all prepared by
Dr. Christensen: Exhibit 5F is the Treating Source Statement,
dated January 14, 2015; [AR at 392-96;] Exhibit 9F is a Treating
Source Statement, dated May 6, 2015; [AR at 434-38;] Exhibit 11F
is the Medical Source Statement – Mental, dated November 4, 2015;
[AR at 444-46;] Exhibit 12F at page 2 is Dr. Christensen's letter
dated May 18, 2016 ("5/18/16 Letter"); [AR at 448;] pages 16-20
are the Report of Treating Mental Health Provider, dated May 6,
2015; [AR at 462-66;] pages 28-32 are the Report of Treating
Mental Health Provider, dated May 6, 2015; [AR at 474-78;] and
page 40 is Dr. Christensen's letter dated August 5, 2014 ("8/5/14
Letter"), [AR at 486].

[18] Exhibit 12F at page 26 is Dr. Christensen's February 24,
2015 letter ("2/24/15 Letter"), [AR at 472,] and page 43 is
Dr. Christensen's April 2, 2014 letter ("4/2/14 Letter"), [AR at
489].

assistance.  [Id. (citing Exhibits 5F; 9F; 12F, pages 18-19 and
30-31).[19]]

Dr. Christensen's records indicate Plaintiff did not
always suffer from anxiety of affective disorder symptoms, and
that most issues related to intergenerational familial problems,
poor motivation and sleep difficulty.  Dr. Christensen noted
Plaintiff "sounds a little bit like a martyr" regarding her
family.  [Id. (citing 12F, p. 11).]  The only time
Dr. Christensen noted Plaintiff demonstrated a potentially
significant mental impairment was in the summer of 2015 when
Plaintiff was non-compliant with treatment, and decided to change
her medication on her own by stopping her antidepressant for four
days and then taking only a half dose.  Later in October 2015,
Dr. Tanaka reported Plaintiff told him she felt "relatively
well," [id. at 30 (citing Exhibit 16F, p. 16),[20]] and in December
2015, Dr. Christensen reported Plaintiff said she was feeling
depressed with some anxiety, but it was manageable.  [Id. (citing

_____

[19] The following Exhibits were all prepared by
Dr. Christensen: Exhibit 5F is a Treating Source Statement, dated
January 14, 2015; [AR at 392-96;] Exhibit 9F is a Treating Source
Statement, dated May 6, 2015; [AR at 434-38;]; Exhibit 12F at
pages 18-19 are excerpts from progress notes dated May 6, 2015;
[AR at 464-65;] and Exhibit 12F at pages 30-31 are excerpts from
progress notes dated January 14, 2016, [AR at 476-77].

[20] Exhibit 16F at page 16 is the first page of a two-page
report from Dr. Tanaka dated October 10, 2015.  [AR at 556.]

Exhibit 12F, p. 8).[21]]  In February 2016, Dr. Christensen noted
Plaintiff looked more put-together on a weekly basis.  [Id.
(citing Exhibit 12F, p. 4).]

Dr. Frisch and Dr. Torigoe concluded Plaintiff could:
understand, remember and carry out simple work instructions;
maintain regular attendance and sustain an ordinary routine
without special supervision; interact with peers and supervisors
in a work setting with limited demands and social interaction;
and adapt to routine changes in a simple work setting within her
physical abilities.  [Id. (citing Exhibits 1A, 2A, 5A, 6A).]
Plaintiff and her daughter submitted testimony that Plaintiff did
not handle stress or changes in routine well; however, the ALJ
found the medical evidence did not support their complaints.  The
ALJ gave great weight to Dr. Frisch and Dr. Torigoe's mental RFC
assessment, despite it being based on nonexamining relationships,
because the medical evidence supports their assessment, and both
physicians are familiar with the Social Security disability
program.  [Id.]

Dr. Christensen gave Plaintiff Global Assessment of
Functioning ("GAF") scores of sixty five and seventy, indicating
only mild mental impairment, which was consistent with

---

[21] Exhibit 12F at page 8 is a progress note from
Dr. Christensen from October 13, 2015 through December 8, 2015.
[AR at 454.]

Dr. Christensen's conclusions.[22]  [Id. at 30 (citing Exhibits 7F,

p. 1; 12F, pgs. 2, 16, 26, 40, 43).[23]]  The ALJ noted GAF scores

are not the best evidence of mental impairment, but are supported

by the treatment record.  [Id. (citation omitted).]  GAF scores

do provide further support that additional mental functional

limitations beyond what the ALJ adopted are not warranted.  [Id.]

          Finally, the ALJ concluded Plaintiff was unable to

perform any of her past relevant work as a salesperson or case

aid.  [Id.]  Plaintiff's RFC limited her to simple, routine,

---

[22] The GAF Scale measures "the clinician's judgment of the
individual's overall level of functioning" as to "psychological,
social, and occupational functioning," but not "impairment in
functioning due to physical (or environmental) limitations."
American Psychiatric Association, Diagnostic & Statistical Manual
of Mental Disorders (4th ed. Text Revision 2000) ("DSM-IV-TR") at
32.  The GAF Scale ranges from 0-100.  A GAF score between 61-70
represents "[s]ome mild symptoms (e.g., depressed mood and mild
insomnia) or some difficulty in social, occupational, or school
functioning (e.g., occasional truancy, or theft within the
household), but generally functioning pretty well, has some
meaningful interpersonal relationships."  Id. at 34 (emphases
omitted).  However, the GAF Scale has been replaced by another
global measure of disability.  See American Psychiatric
Association, Diagnostic & Statistical Manual of Mental Disorders
(5th ed. 2013) ("DSM-V") at 16.

[23] The ALJ incorrectly cited Exhibit 7F in his Decision,
which is a Physician's Questionnaire prepared by Dr. Papst.
[AR 401-04.]  The correct Exhibit is 9F, which is a report from
Dr. Christensen dated May 6, 2015 indicating Plaintiff had a GAF
score of seventy.  [AR at 434-38.]  Exhibit 12F at page 2 is
Dr. Christensen's 5/18/16 Letter, [AR at 448,] page 16 is the
first page of Dr. Christensen's Report of Treating Mental Health
Provider, dated May 6, 2015, [AR at 462,] page 26 is
Dr. Christensen's 2/24/15 Letter, [AR at 472,] page 40 is
Dr. Christensen's 8/5/14 Letter, [AR at 486,] and page 43 is a
letter from Dr. Christensen dated April 2, 2014, [AR at 489].

repetitive tasks; her prior occupations exceeded her current capacity for unskilled work.

The ALJ noted that, at the time of the alleged onset date, Plaintiff was fifty-five years old and considered an individual of advanced age. She has a high school education, speaks English, and is limited to simple, routine, repetitive tasks (*i.e.*, unskilled work), with no transferrable skills. [<u>Id.</u> at 31.]

Considering these factors and the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [<u>Id.</u>] The ALJ noted Plaintiff's additional limitations eroded the unskilled medium exertion occupations base, and asked the VE whether jobs exist for Plaintiff's age, education, work experience, and RFC. The VE testified that, given all of these factors, Plaintiff could perform the following occupations:

> 1. Kitchen helper, [Dictionary of Occupational Titles ("DOT")] 318.687-010, medium level of exertion, unskilled [specific vocational preparation] 2, with 276,861 jobs in the national economy;
>
> 2. Stores laborer, DOT 922.687-058, medium, unskilled, with 20,461 national jobs, and;
>
> 3. Hand packager, DOT 920.587-018, medium, unskilled, with 42,130 national jobs.

[Id.]  The ALJ found these jobs to be significant and accepted the VE's testimony because it was not contradicted, and was consistent with the information in the DOT and its companion documents.  [Id. (citing SSR 00-4p).]  The ALJ concluded Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy; therefore, a finding of "not disabled" was appropriate under Medical-Vocational Rule 203.15.  [Id. at 31-32 (quoting SSR 83-14).]

Finally, the ALJ determined that Plaintiff had not been under a disability from the March 1, 2013 onset date.  In conclusion, the ALJ ruled Plaintiff was not disabled as to her Title II application for a period of disability and disability insurance benefits, and not disabled as to her Title XVI application for supplemental security income.  [Id. at 32.]

In the instant Appeal, Plaintiff argues the ALJ erred when he failed to consider Plaintiff's and Ms. Thompson's testimony regarding Plaintiff's limitations, and failed to properly reject it.  [Amended Brief at 1-2.]  Additionally, Plaintiff argues the ALJ failed to present a hypothetical to the VE that contained all of the limitations he determined Plaintiff to have in his RFC finding.  As a result, Plaintiff argues the VE's testimony had no evidentiary value, and the ALJ failed to

meet his burden of proving there were sufficient jobs in the national economy that Plaintiff could perform.  [Id.]

**STANDARD**

**I.   Review of Social Security Decisions**

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal.  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, in reviewing the Commissioner's decision, this Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error.  Id.  "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted).  In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole.  Id.  Where the inferences reasonably drawn from the record would support either affirmance or reversal, the district court may not substitute its judgment for the ALJ's.  Molina v. Astrue, 674 F.3d 1104, 1110-11 (9th Cir. 2012).  To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve

17

ambiguities in the record.'"  Brown-Hunter v. Colvin, 806 F.3d

487, 492 (9th Cir. 2015) (quoting Treichler, 775 F.3d at 1098).

## II.  **Five-Step Analysis**

In cases involving review of the denial of social

security disability benefits, the following analysis applies:

> For purposes of the Social Security Act, a
> claimant is disabled if the claimant is unable "to
> engage in any substantial gainful activity by
> reason of any medically determinable physical or
> mental impairment which can be expected to result
> in death or which has lasted or can be expected to
> last for a continuous period of not less than 12
> months."  42 U.S.C. § 423(d)(1)(A).  In order to
> determine whether a claimant meets this
> definition, the ALJ employs a five-step sequential
> evaluation.  Parra v. Astrue, 481 F.3d 742, 746
> (9th Cir. 2007); 20 C.F.R. §§ 404.1520(a),
> 416.920(a).  In brief, the ALJ considers whether a
> claimant is disabled by determining: (1) whether
> the claimant is "doing substantial gainful
> activity"; (2) whether the claimant has a "severe
> medically determinable physical or mental
> impairment" or combination of impairments that has
> lasted for more than 12 months; (3) whether the
> impairment "meets or equals" one of the listings
> in the regulations; (4) whether, given the
> claimant's "residual functional capacity," the
> claimant can still do his or her "past relevant
> work"; and (5) whether the claimant "can make an
> adjustment to other work."  20 C.F.R.
> §§ 404.1520(a), 416.920(a).  The claimant bears
> the burden of proof at steps one through four.
> Parra, 481 F.3d at 746.

Molina, 674 F.3d at 1110.  If the analysis reaches step five, the

burden shifts to the Commissioner to prove that the claimant can

perform other work.  Garrison v. Colvin, 759 F.3d 995, 1011 (9th

Cir. 2014).

## DISCUSSION

## I.  Whether Can Perform Medium Work

Plaintiff argues the ALJ improperly rejected her testimony and Ms. Thompson's testimony, which - had it been properly considered - shows that Plaintiff is disabled and therefore, unable to perform "medium work."  In order to address this issue, this Court first examines whether the ALJ properly rejected Plaintiff's and Ms. Thompson's testimony, and if not, whether such error was harmless to the ALJ's ultimate nondisability determination.  See Treichler, 775 F.3d at 1099 (citation omitted).

### A.  Plaintiff's Testimony

With regard to rejecting plaintiff's testimony, the Ninth Circuit has set forth the following test:

> "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment." [Treichler, 775 F.3d] at 1102, quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  Then, if such evidence is introduced and "the ALJ has not determined that the claimant is malingering, the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony regarding the severity of the claimant's symptoms."  Id., quoting Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).

Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Berry v. Astrue, 622 F.3d 1228, 1234

19

(9th Cir. 2010) (citation and internal quotation marks omitted).

Plaintiff contends the ALJ failed to properly address Plaintiff's

complaints that: she cannot walk for more than a couple of

minutes before resting due to her breathing issues; can only

carry up to ten to fifteen pounds; and would be off-task twenty

percent of the time due to her fatigue during the day caused by

her COPD, poor sleeping habits, and her additional sensitivity to

vog.  As a result, Plaintiff asserts the ALJ erred in determining

that Plaintiff can perform medium work.

As an initial matter, the ALJ did not affirmatively

state there was evidence of malingering, nor does this Court find

any.  Thus, the ALJ was required to provide specific evidence

that is "clear and convincing" when rejecting Plaintiff's

testimony regarding the severity of her symptoms.  See Treichler,

775 F.3d at 1102 (citation and internal quotation marks omitted).

### 1.  Plaintiff's Ability to Walk and Stand

With regard to Plaintiff's assertion that she is unable

to walk/stand for extended periods of time, the ALJ stated "her

activities of daily living are not consistent with her

allegations of disabling pain and symptoms."[24]  [Decision, AR at

---

[24] The ALJ also observed that Plaintiff appeared "over-medicated" at the Hearing.  See Decision, AR at 28.  The "ALJ's personal observations may be used . . . in 'the overall evaluation of the credibility of [Plaintiff's] statements."  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting SSR 96-7p at 8).

28.]  The ALJ considered Plaintiff's and Ms. Thompson's testimony
that Plaintiff could "make simple meals such as sandwiches, she
would wash clothes and clean up after herself, she could drive a
car, and she could shop in stores with her granddaughter."  [Id.
at 24 (citing Exhibits 1E; 6E; 12E; 13E).]  The ALJ also noted
Plaintiff was planning to travel to California in April 2016,
[id. (citing Exhbit 17F, p.142),] and Plaintiff "gets out a lot
and goes to her mother's residence every day, and she could go to
doctors' visits as well as to the store[,]" [id. at 28].  Thus,
the ALJ identified specific evidence to counter Plaintiff's
testimony concerning the severity of her limiting symptoms, based
on Plaintiff's personal activities.

        To the extent Plaintiff's COPD inhibits her ability to
walk or stand, the ALJ acknowledged Plaintiff suffers from COPD
and asthma.  [Decision, AR at 24.]  However, the ALJ stated the
"intensity, persistence and limiting effects" of Plaintiff's
symptoms are inconsistent with the medical evidence and other
evidence in the record.  [Id. at 28.]  For example, the ALJ noted
that, in 2012, Plaintiff's medication resolved some of
Plaintiff's breathing symptoms, and she showed no intrapulmonary
abnormality.  Plaintiff had a normal pulmonary function test in
September 2014, and Dr. Sulieman stated Plaintiff was doing
"reasonably well with her chronic pulmonary disease," and
understands her symptoms are chronic but stable, and that "her

function is stable at this time." [Id. (citing Exhibits 3F, pages 5-6; 8F, pages 6-8).] In October 2015, Dr. Tanaka noted Plaintiff experienced increased congestion and coughing, but Plaintiff denied shortness of breath or dyspnea on exertion. In December 2015, February 2016, and April 2016, Dr. Sulieman stated Plaintiff's pulmonary status was stable, her symptoms had dramatically improved, and Plaintiff denied experiencing any significant chest pain, palpitations, coughing, or wheezing. [Id. (citing Exhibit 13F, pages 2, 5, 8).] The ALJ identified specific evidence in the record that clearly demonstrated Plaintiff's ability to walk and stand when leaving the house to shop, attend doctors' appointments, perform normal activities of daily living, and travel to the mainland. Thus, the ALJ did not err in rejecting Plaintiff's testimony regarding the severity of her symptoms.[25]

---

[25] Plaintiff argues in a footnote that Plaintiff's medical records support her contention that environmental conditions exacerbate her COPD. [Amended Brief at 26 n.1 (citing AR at 498, 510, 513).] In Dr. Sulieman's report dated February 6, 2016, he states Plaintiff "continues to have some symptoms associated with changes in the environmental conditions. **Overall her degree of cough and respiratory symptoms have improved on present therapy.**" [AR at 498 (emphasis added).] Dr. Sulieman's May 26, 2015 report states Plaintiff's symptoms have not improved. [Id. at 510.] Dr. Sulieman's report dated September 12, 2015 notes Plaintiff's symptoms are exacerbated by multiple environmental factors. [Id. at 513.] Dr. Sulieman's February 6, 2016 report presents more current information that shows improvement of Plaintiff's respiratory treatment, and undercuts Plaintiff's argument that she must be completely precluded from exposure to respiratory irritants.

### 2. Plaintiff's Ability to Lift
### More Than Ten to Fifteen Pounds

The ALJ also pointed to clear and convincing evidence refuting Plaintiff's argument that she cannot lift or carry items to meet the requirements of medium work. Plaintiff testified her right shoulder, neck, and wrist injuries prevent her from lifting and carrying more than ten to fifteen pounds. [Trans. of 8/9/16 Hearing ("Transcript"), AR at 52.] However, the ALJ noted Plaintiff could slide clothes along a rod in her closet, lift the lid of a chest sitting on the floor, tighten a jar, place a can of soup weighing one pound on an overhead shelf, and turn the steering wheel of her car in the opposite direction as her affected arm. [Decision, AR at 25 (citing 17F, p. 156).] Plaintiff essentially had no restrictions with regard to her activities of daily living, notwithstanding her right shoulder complaints. [Id.] The ALJ also stated Plaintiff's shoulder impairment was in part self-inflicted, and her improvement was limited by her "poor compliance with plan of care." [Id. (citing Exhibit 17F, p. 4).] At the Hearing, Plaintiff testified that the last therapy session she attended was in April 2016, and she did not go to her last appointment because it was too painful and she felt her shoulder was only getting worse. [Transcript, AR at 50.]

The ALJ also pointed to the opinions of non-treating reviewing physicians, Dr. Mai and Dr. Shibuya, who opined that

Plaintiff could perform medium-exertional level work with "generally unlimited postural activities, limited use of the right upper extremity (including reaching, and frequent (as opposed to continuous) manipulation)." [Decision, AR at 29 (citing Exhibits 1A; 2A; 5A; 6A).] The ALJ stated he gave great weight to Dr. Mai's and Dr. Shibuya's opinions even though they were nonexamining medical sources, because their opinions were generally consistent with the medical evidence, and they are familiar with the Social Security disability program. [Id.] Further, the January and March 2015 reports prepared by Dr. Papst showed Plaintiff could elevate her right arm ninety percent of the way, and was able to use her hands for gross and dexterous movement within normal limits. [Id. (citing Exhibits 7F; 10F).]

The ALJ also rejected Plaintiff's complaints of right wrist pain and numbness, stating Plaintiff's surgery to remove a cyst was successful. [Id. at 25.] The ALJ noted that, prior to Plaintiff's surgery, on April 14, 2016, Dr. Sakamoto determined Plaintiff had full range of motion of her fingers, and x-rays showed no evidence of arthritis or ligamentous injury. [Id. (citing Exhibit 17F, pages 141-42); AR at 699-700 (Dr. Sakamoto's 4/14/16 notes).] After Plaintiff had her right wrist surgery in April 2016, the ALJ pointed to Dr. Tanaka's May 2016 note indicating that Plaintiff had no pain following her wrist surgery, and experienced no numbness or tingling in her

24

extremities.  [Decision, AR at 25 (citing Exhibit 16F, p. 2); AR at 542 (Dr. Tanaka's 5/24/16 note).]

Finally, the ALJ stated that, since neither Plaintiff's right shoulder impairment nor her right wrist pain lasted the requisite twelve consecutive months to warrant a severe impairment, [Decision, AR at 25 (citing SSR 82-52; SSR 85-28),] there was no basis for imposing a restriction to Plaintiff's use of her right upper extremity, [id. at 29].  Plaintiff's complaints were largely undercut by the opinions of Plaintiff's treating physicians and the record as a whole.  Accordingly, the ALJ properly discounted Plaintiff's complaints in reaching the conclusion that Plaintiff is capable of performing medium level work.

### 3.    **Plaintiff's Ability to Remain On-Task**

Finally, Plaintiff asserts the ALJ failed to properly address her testimony that her COPD, sensitivity to vog, and her daytime fatigue would impair her ability to stay on-task throughout the workday.[26]  [Amended Brief at 24-25.]  Plaintiff's argument is rejected.

---

[26] This issue arose at the end of the Hearing when the VE noted the jobs of kitchen helper, stores laborer, or hand packager would not be available to an individual who would be off-task for twenty percent of the workday.  [Transcript, AR at 59-60.]  To the extent this issue challenges the ALJ's consideration of Plaintiff's and Ms. Thompson's testimony of Plaintiff's limiting symptoms, the Court reviews this portion of Plaintiff's Appeal as a challenge to the ALJ's RFC determination at step four.

With regard to Plaintiff's complaints of not getting restful sleep based on her COPD and anxiety, the ALJ pointed out that Plaintiff underwent a sleep study in October 2014, which only showed mild obstructive sleep apnea. [Decision, AR at 25 (citing Exhibits 3F, pages 14-17; 8F, pages 21-24; 15F, p. 4).] The ALJ found no evidence that Plaintiff suffered a severe sleep disorder separate from her breathing impairment. Dr. Christensen's progress notes also indicate Plaintiff had "mostly intergenerational familial problems and poor motivation as well as sleep difficulty," [Decision, AR at 29,] but in December 2015, Plaintiff told Dr. Christensen that she was still feeling "depressed and some anxiety but [it was] manageable." [Id. at 30 (alteration in Decision) (citing Exhibit 12F, p. 8).] There are no other reports from Plaintiff's treating and non-treating physicians that would indicate a more severe mental condition with regard to Plaintiff's anxiety to support Plaintiff's complaints. Thus, the record demonstrates that there is substantial evidence to support the ALJ's decision to reject Plaintiff's testimony with regard to her sleeping issues.

Moreover, Dr. Torigoe and Dr. Frisch, after reviewing Plaintiff's written testimony and medical records, determined that Plaintiff had only "moderate" difficulties maintaining concentration, persistence, and pace. [Id. at 24 (citing Exhibits 1A; 2A; 5A; 6A).] The ALJ also noted Dr. Christensen's

26

opinion that Plaintiff had "marked difficulties maintaining concentration, persistence and pace, but on the other hand [Plaintiff] was capable of maintaining regular job attendance and persisting at simple, repetitive work tasks on a consistent basis." [Id. (citing Exhibits 5F, p. 3; 9F, p. 3; 11F, p. 2; 12F, pages 18, 30).] The ALJ relied upon both non-treating and treating physician's opinions in reaching his conclusion which were generally in agreement. Thus, the ALJ pointed to clear and convincing evidence in the record that demonstrates Plaintiff is able to remain on-task, despite her complaints to the contrary.

Since the ALJ provided clear and convincing evidence to contravene Plaintiff's testimony regarding the severity of her symptoms and her limitations, the ALJ properly rejected Plaintiff's testimony. See Leon, 880 F.3d at 1046. Accordingly, the portion of Plaintiff's Appeal asserting the ALJ erred in failing to consider Plaintiff's testimony is DENIED.

**B.** **Lay Witnesses**

Plaintiff also argues the ALJ improperly ignored testimony from Plaintiff's daughter, Ms. Thompson, in determining Plaintiff was not disabled. On this issue, the Ninth Circuit has stated:

> Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). We have held

27

that competent lay witness testimony "cannot be
disregarded without comment," <u>Nguyen</u>, 100 F.3d at
1467, and that in order to discount competent lay
witness testimony, the ALJ "must give reasons that
are germane to each witness," <u>Dodrill</u>, 12 F.3d at
919. We have not, however, required the ALJ to
discuss every witness's testimony on a
individualized, witness-by-witness basis. Rather,
if the ALJ gives germane reasons for rejecting
testimony by one witness, the ALJ need only point
to those reasons when rejecting similar testimony
by a different witness. <u>See</u> <u>Valentine [v. Comm'r
Soc. Sec. Admin.]</u>, 574 F.3d [685,] 694 [(9th Cir.
2009)] (holding that because "the ALJ provided
clear and convincing reasons for rejecting [the
claimant's] own subjective complaints, and because
[the lay witness's] testimony was similar to such
complaints, it follows that the ALJ also gave
germane reasons for rejecting [the lay witness's]
testimony"). The applicable regulations are in
accord; they require the ALJ to consider testimony
from family and friends submitted on behalf of the
claimant, <u>see</u> 20 C.F.R. §§ 404.1529(c)(3),
404.1545(a)(3), but do not require the ALJ to
provide express reasons for rejecting testimony
from each lay witness, <u>see</u> <u>id.</u>; <u>see also</u>
SSR 06-03p (recognizing that "there is a
distinction between what an adjudicator must
consider and what the adjudicator must explain in
the disability determination or decision").

<u>Molina</u>, 674 F.3d at 1114 (some alterations in <u>Molina</u>).

Ms. Thompson's subjective testimony was largely the

same as Plaintiff's, and repeated identical complaints Plaintiff

had testified to experiencing. <u>See, e.g.</u>, Decision, AR at

24 & 30. However, it is clear that the ALJ did consider it in the

Decision, but did not afford it much weight since it was neither

consistent with Plaintiff's activities of daily living nor the

opinions of her examining and nonexamining physicians. [<u>Id.</u>]

Overall, Ms. Thompson did not add any new testimony other than

28

what Plaintiff had already stated, and Plaintiff does not point to any differing testimony from Ms. Thompson that went unaddressed. Since the ALJ properly considered and rejected portions of Plaintiff's subjective complaints, and Ms. Thompson's testimony was similar to Plaintiff's complaints, this Court concludes that the ALJ gave germane reasons for rejecting Ms. Thompson's testimony. See Valentine, 574 F.3d at 694. Accordingly, the portion of Plaintiff's Appeal asserting the ALJ failed to properly address Ms. Thompson's testimony is DENIED.

## II. Whether the ALJ Erred in His Hypothetical to the Vocational Expert

At the step five of the sequential analysis, the burden shifted to the Commissioner to show that the Plaintiff is not disabled and can perform work that exists in significant numbers in the national economy. See Hill, 698 F.3d at 1162. "The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record." Id. (citations omitted). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and internal quotation marks omitted).

Plaintiff asserts the ALJ committed harmful error by failing to include in his hypothetical to the VE that Plaintiff can have only occasional interaction with supervisors ("supervisor limitation"), pursuant to the ALJ's RFC findings. The parties do not dispute that the ALJ did not include the supervisor limitation in his hypothetical. Plaintiff asserts this single omission constitutes legal error, since the ALJ's hypothetical did not include all of the limitations the ALJ found Plaintiff to have. The Commissioner argues this was harmless error, and the VE's recommended jobs of kitchen helper, stores laborer, or hand packager essentially accounted for Plaintiff's capabilities and limitations.

While the Ninth Circuit generally requires the ALJ to pose a hypothetical "reflecting all the claimant's limitations, both physical and mental, supported by the record," see Hill, 698 F.3d at 1161, this Court may nevertheless uphold the Decision where the ALJ's error was harmless. See Treichler, 775 F.3d at 1099. "An error is harmless if it is inconsequential to the ultimate nondisability determination." Id. (citation and internal quotation marks omitted). The burden of establishing an error is harmful falls on the party challenging the ALJ's decision. See Molina, 674 F.3d at 1111 (citation omitted).

Plaintiff has not demonstrated the ALJ's omission was harmful error. First, the ALJ's belief that Plaintiff had a

supervisor limitation was presumed in his questions to the VE, and was accurately reflected in the occupations that the VE selected.  As the Commissioner points out, the job descriptions of a kitchen helper, stores laborer, and hand packager are described in the DOT as not involving significant taking of instructions,[27] *i.e.* "[a]ttending to the work assignment instructions or orders of [a] supervisor."  See DOT, App'x B - Explanation of Data, People, and Things, 1991 WL 688701 (Jan. 1, 2016).  "Talking" is also noted as "Not Present - Activity or condition does not exist" with regard to the kitchen helper, stores laborer, and hand packager.  See DOT 920.587-018, 1991 WL 687916; DOT 922.687-058, 1991 WL 688132; DOT 318.687-070, 1991 WL 672755.  Thus, the occupations chosen by the VE involve minimal interaction or talking with others, which demonstrates that the VE understood Plaintiff's supervisor limitation.  While the better practice would have been to specifically include the title 'supervisor' in his hypothetical, the ALJ's questions to the VE regarding available job within Plaintiff's limitations were broad enough to support an inference that supervisors were included.

---

[27] See DOT 920.587-018, 1991 WL 687916 (Jan. 1, 2016) (hand packager); DOT 922.687-058, 1991 WL 688132 (Jan. 1, 2016) (stores laborer); DOT 318.687-070, 1991 WL 672755 (Jan. 1, 2016) (kitchen helper).

Further, even if these jobs required Plaintiff to have
more than occasional interactions with supervisors, this Court
finds substantial evidence in the record that Plaintiff is
capable of doing so. Plaintiff's interactions with the general
public while traveling and shopping all indicate that she has
some ability to handle more than occasional interaction with
supervisors. Dr. Frisch and Dr. Torigoe both concluded that
Plaintiff could: understand, remember, and carry out simple work
instructions; maintain regular work attendance; sustain an
ordinary routine without special supervision; interact adequately
with peers and supervisors in a work setting with limited demands
for social interaction; and could adapt to routine changes in a
simple work setting within her physical abilities. [Decision,
AR at 30 (citing Exhibits 1A; 2A; 5A; 6A).] Even though the ALJ
only gave partial weight to Dr. Christensen's opinions due to her
inconsistencies, Dr. Christensen noted that throughout 2015

> [Plaintiff] could understand and remember simple
> work instructions, she could maintain regular job
> attendance and persist at simple repetitive work
> tasks on a consistent basis under ordinary
> supervision, she could get along with supervisors
> and co-workers if contact were minimal, she could
> adapt to and cope with a low-demand entry-level
> job, and she was capable of managing benefits in
> her own best interest without assistance.

[Id. at 29 (citing Exhibits 5F; 9F; 12F, pages 18-19 and 30-31).]
Further, in Dr. Christensen's May 2015 report, which was
considered by the ALJ, Dr. Christensen indicated Plaintiff was

responding to treatment and "[g]aining coping skills and building insight for herself and others," making better choices and speaking up for herself more. [AR at 435 (page 2 of 5 of Report of Treating Mental Health Provider, dated 5/6/15).] Dr. Frisch also noted Plaintiff was only "moderately limited" in her ability to accept instructions and respond to criticism from supervisors, and opined that Plaintiff "can interact adequately with peers and supervisors in a work setting that has limited demands for social interaction." [AR at 75 (page 13 of 15 of Disability Determination Explanation, dated 3/16/15).] Dr. Torigoe also noted Plaintiff was capable of carrying out "simple work instructions, maintain[ing] regular attendance, and sustain[ing] an ordinary routine without special supervision." [AR at 127 (Exhibit 6A at p. 15 of 18).] Based on the opinions of both Plaintiff's examining physicians , and the nonexamining agency physicians, which show Plaintiff's ability to accept instructions, work with her peers and supervisors, communicate, and her increasing ability to adapt and cope with others, this Court finds Plaintiff is capable of having more than occasional interaction with her supervisors. Nevertheless, to the extent the ALJ believed Plaintiff's supervisor limitation to be true, it was included in his hypothetical.

The Court CONCLUDES the ALJ's hypothetical to the VE was ultimately correct. The VE identified jobs that Plaintiff is

capable of performing, which exist in significant numbers in the national economy; therefore, the overall nondisability outcome remains unaffected by the ALJ's alleged error of failing to specifically include supervisors in his hypothetical to the VE. This epitomizes the concept of harmless error. See, e.g., Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993) (the ALJ's failure to mention claimant's inability to remain in one position to vocational expert was harmless error because the record demonstrated claimant had not shown he was unable to return to his previous job as a receiving clerk and inspector, which involved both sitting and standing); McGarrah v. Colvin, 650 F. App'x 480, 481 (9th Cir. 2016) (citing Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (the ALJ's mistake in formulating his hypothetical question did not negate the validity of the nondisability determination where jobs such as packager and dishwasher accounted for claimant's limitations)).  For these reasons, the Court ADOPTS the ALJ's nondisability determination as practical and supported by the law and common sense. Accordingly, the Court DENIES the portion of Plaintiff's Appeal asserting the ALJ erred at step five because he failed to include Plaintiff's supervisor limitation in his hypothetical to the VE.

## CONCLUSION

On the basis of the foregoing, Plaintiff's appeal of the Administrative Law Judge's October 20, 2016 Decision is

HEREBY DENIED, and the ALJ's Decision is AFFIRMED with no further changes.

There being no remaining issues in this case, the Court DIRECTS the Clerk's Office to enter judgment and close the case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 28, 2018.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

COLEEN COLUNGA VS. NANCY A. BERRYHILL, ETC; CIVIL 18-00085 LEK-KJM; ORDER DENYING PLAINTIFF'S APPEAL AND AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S OCTOBER 20, 2016 DECISION